**CALIFORNIA MOTOR TRANSPORT CO.,
Ltd., et al. v. FIDELITY & CASUALTY
CO. OF NEW YORK et al.**

No. 12722.

United States Court of Appeals
Ninth Circuit.

Oct. 30, 1951.

Rehearing Denied Dec. 3, 1951.

Norman A. Eisner, San Francisco, Cal., for appellant.

Hadsell, Murman & Bishop and Sydney P. Murman, all of San Francisco, Cal., for appellee Fidelity & Casualty Co. of N. Y.

Orla St. Clair, Arthur H. Connolly, Jr., and St. Clair, Connolly & Cerini, all of San Francisco, Cal., for appellee Bayly, Martin & Fay, Inc.

Before MATHEWS, ORR and POPE, Circuit Judges.

MATHEWS, Circuit Judge.

The Fidelity & Casualty Company of New York, a New York corporation, hereafter called Fidelity, brought an action against appellants[1] to recover of them $7,841.99, with interest and costs. Appellants, as third-party plaintiffs, served a complaint on Bayly, Martin & Fay, a California corporation, hereafter called Bayly, as third-party defendant. Appellants answered Fidelity's complaint, Bayly answered appellants' complaint, a trial was had, an opinion was filed, findings of fact and conclusions of law were stated, and a judgment was entered ordering, adjudging

1. There are ten appellants—five California corporations and five individual citizens of California.

and decreeing that Fidelity recover of appellants $7,841.99, with interest and costs, that appellants recover nothing of Bayly, and that Bayly recover costs of appellants. This appeal is from that judgment.

At all pertinent times Fidelity, Bayly and appellants were doing business in California—Fidelity as an insurer, Bayly as an insurance broker and appellants as motor carriers—and Bayly was appellants' agent and broker for the purpose of procuring liability insurance for appellants.[2]

On August 25, 1945, Bayly procured from Fidelity for appellants a liability policy (No. SPL 1457), whereby Fidelity insured appellants, for the year commencing September 1, 1945, against liability for damages, within specified limits,[3] because of bodily injury or property damage arising out of the ownership, maintenance or use of any automobile. As premiums thereon, appellants were required by policy No. SPL 1457 to pay Fidelity $1.223 per $100 of appellants' gross earnings.

On or before August 27, 1946, Bayly requested Fidelity to issue to appellants and deliver to Bayly for appellants a new policy covering, for the year commencing September 1, 1946, the risk theretofore covered by policy No. SPL 1457. Fidelity did not immediately comply with Bayly's request, but did, on August 27, 1946, issue to appellants and deliver to Bayly for appellants a binder reading, in part, as follows:

"[Fidelity] hereby binds insurance, on the risk described below,[4] for the period of sixty days from [September 1, 1946] * * * pending renewal of policy No. SPL 1457.

"If [Fidelity] accepts the risk, the policy issued shall supersede this binder, and the policy term shall begin on [September 1, 1946]. If the risk is not accepted, this binder may run to expiration, or [Fidelity] may cancel by mailing notice to [appellants and Bayly]. A premium charge at the rates and in compliance with the rules of the manual of rates in use by [Fidelity] when this binder becomes effective[5] will be made for the time this binder is in effect if no policy of insurance in place hereof is issued and accepted by [appellants]. * * *"

On or about October 1, 1946, Fidelity issued to appellants and delivered to Bayly for appellants two new policies (Nos. SPL 20950 and SPL 20968),[6] which, if effective, superseded the binder and covered, for the year commencing September 1, 1946, the risk theretofore covered by policy No. SPL 1457,[7] subject, however, to cancellation as provided in the new policies. The new policies provided that, as premiums thereon, appellants should pay Fidelity $2.20 per $100 of appellants' gross earnings.[8]

Immediately after the new policies were delivered to Bayly, appellants were informed of such delivery. Appellants could have obtained the new policies from Bayly

2. In procuring insurance for appellants and in all matters relating thereto Bayly acted by and through its agent and vice president, Henry R. Cantlen, also known as Harry R. Cantlen. In Fidelity's complaint and in the trial court's opinion, Cantlen was referred to as appellants' agent. Actually Cantlen was appellants' agent only in the sense that he was the agent and vice president of appellants' agent and broker, Bayly.

3. The limits of liability specified in policy No. SPL 1457 were, for bodily injury, $100,000 for each person and $300,000 for each accident; for property damage, $5,000 for each accident.

4. The risk described was that covered by policy No. SPL 1457.

5. The binder became effective on September 1, 1946.

6. Policy No. SPL 20950 was dated September 24, 1946, and policy No. SPL 20968 was dated October 1, 1946, but both were delivered to Bayly at the same time—on or about October 1, 1946.

7. Policy No. SPL 20968 covered a part of the risk, and policy No. SPL 20950 covered all of the risk except that covered by policy No. SPL 20968.

8. Policy No. SPL 20950 provided for the payment of 20 cents per $100 of appellants' gross earnings, and policy No. SPL 20968 provided for the payment of $2 per $100 of appellants' gross earnings.

at any time thereafter. Instead, appellants permitted Bayly to retain the new policies, and Bayly did retain them for appellants, until after January 21, 1947. While so retained, the new policies were accessible to appellants and could have been read by appellants at any time. Bayly complained to Fidelity about the premium rates specified in the new policies and tried, without success, to persuade Fidelity to agree to a reduction thereof,. but Bayly did not, nor did appellants, reject or refuse to accept the new policies.

Fidelity delivered to Bayly, with the new policies, a proposed agreement,[9] which Fidelity had executed, and which, if appellants had executed it, would have modified the provisions of policy No. SPL 20968 so that the premium rate therein specified [10] would have been subject to adjustment, upward or downward, to conform to appellants' loss experience—an adjustment which could have raised or lowered the rate by as much as 50%. However, appellants never executed the proposed agreement. Consequently it never became effective.

Although the new policies and the proposed agreement. were delivered to Bayly at the same time, Fidelity, so far as the record shows, did not then or at any time state that the new policies were not to be effective unless and until appellants executed the proposed agreement. Neither of the new policies contained any such statement or provision. The proposed agreement was not mentioned in either of the new policies. Appellants' failure to execute the proposed agreement cannot, therefore, be regarded as a rejection of or refusal to accept the new policies.

Each of the new policies provided: "This policy may be canceled by [Fidelity] by mailing to [appellants] at the address shown in this policy written notice stating when, not less than five days thereafter, such cancellation shall be effective." On

December 19, 1946, Fidelity mailed to appellants at the address shown in the new policies written notices stating that the new policies were thereby canceled, and that such cancellation would be effective on January 21, 1947. Consequently the new policies, if effective, were in effect only for the period from September 1, 1946, to January 21, 1947.

For that period, if the new policies were effective, premiums thereon, computed as therein provided,[11] amounted to $16,973.-12. Appellants paid Fidelity, as premiums for that period, sums aggregating $9,131.-13. To recover the balance, $7,841.99, with interest and costs, this action was brought on May 5, 1948.

The evidence showed the facts to be as we have stated them. The trial court held that the new policies became effective and were in effect for the period from September 1, 1946, to January 21, 1947. Appellants here contend that the new policies did not become effective. We reject this contention for the following reasons:

█ If not effective, the new policies did not supersede the binder. If not superseded, the binder expired on October 31, 1946.[12] For the period from October 31, 1946, to January 21, 1947, appellants had no liability insurance except that provided by the new policies. Without such insurance, appellants could not lawfully do business as motor carriers in California. However, appellants and Fidelity treated the new policies as being effective. Accordingly, appellants did business as motor carriers in California for and during the entire period from September 1, 1946, to January 21, 1947, reported to Fidelity their gross earnings for that period, as required by the new policies, and paid Fidelity, as premiums for that period, sums aggregating $9,131.13. Also, under and pursuant to the new policies, appellants reported to Fidelity all automobile accidents occurring within that period which resulted or were

9. The proposed agreement was sometimes referred to by Fidelity, Bayly and appellants as a retrospective agreement.

10. See footnote 8.

11. See footnote 8.

12. Appellants did not allege, nor did the trial court find, nor was there any evidence from which it could have found, that the binder was extended.

claimed to have resulted in bodily injury or property damage for which appellants were liable or were claimed to be liable [13] and reported to Fidelity all such liability claims and all actions brought thereon.[14] As required by the new policies, Fidelity paid or settled all such claims or defended the actions brought thereon and, if unsuccessful, paid the judgments obtained in such actions. In view of these facts, appellants cannot be heard to say that the new policies did not become effective.

 In their answer, appellants alleged, in substance, that the earnings reports and premium payments made by appellants to Fidelity for the period from September 1, 1946, to January 21, 1947, were based on the premium rate specified in policy No. SPL 1457; that such reports and the checks whereby appellants made such payments showed this;[15] that such reports and checks were received and accepted by Fidelity; that appellants were thereby led and induced to believe that the premium rate specified in Policy No. SPL 1457 was in effect for the period from September 1, 1946, to January 21, 1947; and that Fidelity was thereby estopped from asserting that any other premium rate was in effect for that period. Appellants here contend that Fidelity was, and should have been held to be, so estopped. We reject this contention for the following reasons:

The trial court did not find that appellants were led or induced to believe, or did believe, that the premium rate specified in policy No. SPL 1457 was in effect for the period from September 1, 1946, to January 21, 1947, nor did the evidence warrant such a finding. Instead, the evidence showed that appellants, at all times during that period, were well aware that the premium rate specified in policy No. SPL 1457 was not in effect at any time after September 1, 1946. Obviously, there was no estoppel.

We conclude, as did the trial court, that Fidelity was entitled to recover of appellants $7,841.99, with interest and costs.

In their complaint, appellants alleged, in substance, that Bayly made certain misrepresentations to them and failed and neglected to disclose to them certain facts which it should have disclosed, and that their liability, if any, to Fidelity resulted from such misrepresentations, failure and neglect. They therefore prayed that, if adjudged liable to Fidelity in any sum, they be awarded judgment against Bayly in a like sum. They here contend that their prayer should have been granted. We reject this contention for the following reasons:

The above mentioned allegations of appellants' complaint were found by the court to be untrue. The finding was not clearly erroneous. We therefore accept it as correct.[16]

Judgment affirmed.

13. Many of the accidents so reported occurred after October 31, 1946.

14. In making reports and paying premiums for the period from September 1, 1946, to January 21, 1947, appellants referred to the new policies, giving their numbers (SPL 20950 and SPL 20968). Policy No. SPL 1457 was not, nor was the binder, mentioned or referred to.

15. See, however, footnote 14.

16. See Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A.